UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Chapter 11

A&E ADVENTURES LLC,[1]

Case No. 21-19272-LMI

Debtor.

_____/

**NOTICE OF FILING DECLARATION OF MICHAEL ABECASSIS
IN SUPPORT OF FIRST DAY MOTIONS**

A&E Adventures LLC (***"Debtor"*** or ***"GameTime"***), by and through undersigned counsel,

hereby files the Declaration of Michael Abecassis in Support of First Day Motions.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served on

September 29, 2021, via the Court's Notice of Electronic Filing upon the Registered Users listed

on the attached Exhibit 1.

 s/ James C. Moon
 James C. Moon, Esquire
 Florida Bar No. 938211
 jmoon@melandbudwick.com
 Meaghan E. Murphy, Esquire
 Florida Bar No. 102770
 mmurphy@melandbudwick.com
 MELAND BUDWICK, P.A.
 3200 Southeast Financial Center
 200 South Biscayne Boulevard
 Miami, Florida 33131
 Telephone: (305) 358-6363
 Telecopy: (305) 358-1221

 *Proposed Attorneys for Debtor*

---

[1]     The Debtor's current mailing address is 5000 Oaks Rd, Unit H, Davie, FL 33314.  The Debtor's EIN is 43-2110385.

**<u>EXHIBIT 1</u>**

**Electronic Mail Notice List**

The following is the list of **<u>parties</u>** who are currently on the list to receive email notice/service for this case.

- **Ryan E Davis**    rdavis@whww.com, thiggens@whww.com;thiggens@ecf.courtdrive.com
- **James C. Moon**    jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Meaghan E Murphy**    mmurphy@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@melandbudwick.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com;mmurphy@ecf.courtdrive.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Chapter 11

A&E ADVENTURES LLC,[1]                      Case No. 21-19272-LMI

Debtor.

_____/

## DECLARATION OF MICHAEL ABECASSIS IN SUPPORT OF FIRST DAY MOTIONS

I, Michael Abecassis, declare under penalty of perjury of the United States of America that the following is true to the best of my knowledge, information and belief:

1.      I am the managing member of the Debtor-in-Possession, A&E Adventures LLC ("*GameTime*" or the "*Debtor*"). Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees or advisors, or my opinion based upon my experience with the Debtor's operations and financial condition.

2.      If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents or my personal opinion.

3.      I am authorized to submit this Declaration on behalf of the Debtor.

4.      On September 24, 2021 ("*Petition Date*"), the Debtor commenced this Chapter 11 case by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("*Bankruptcy Code*").

---

[1]     The Debtor's current mailing address is 5000 Oaks Rd, Unit H, Davie, FL 33314. The Debtor's EIN is 43-2110385.

5.      The Debtor intends to operate its business and manage its assets as a debtor-in-possession pursuant to 11 U.S.C. § 1107(a) and 1108.

6.      To minimize any business disruption caused by the commencement of this Chapter 11 case and to ensure a smooth transition into Chapter 11, the Debtor seeks various types of relief through "first day" applications and motions that have been filed, including, but not limited to:

a)      Application of the Debtor for an Order, on an Interim Basis, Authorizing the Employment and Retention of Meland Budwick, P.A. as Attorneys for the Debtor and Debtor in Possession Effective as of the Petition Date [ECF No. 5] (the "*MB Application*");

b)      Debtor's Emergency Motion for Authorization to Pay Certain Prepetition Employee Obligations and Maintain and Continue Employee Benefits and Programs [ECF No. 6] (the "*Wage Motion*");

c)      Debtor's Emergency Motion Pursuant to Sections 105(a), 363(b), and 503(b)(1) of the Bankruptcy Code for Authorization to Honor Certain Prepetition Customer Programs ECF No. 7] (the "*Customer Programs Motion*");

d)      Emergency Motion of the Debtor for Interim and Final Orders (I) Authorizing Debtor to Utilize Cash Collateral Effective as of September 24, 2021 (II) Granting Adequate Protection and (III) Scheduling Final Hearing [ECF No. 12] (the "*Cash Collateral Motion*"); and

e)      Debtor's Emergency Motion to Treat American Express as a Critical Vendor and Authorizing Payment of Prepetition Claim [ECF No. 13] (the "*Critical Vendor Motion*").

Collectively, the "*First Day Motions*."

## Background & Reasons for Filing Chapter 11

7.      The Debtor, operating as GameTime, is a family entertainment destination with fun indoor amusements offering a full-service dining experience and full liquor sports bar in Miami, Fort Myers, Daytona, Ocoee, Tampa and Kissimmee where customers can play over 100 interactive games in the Mega Arcade. Customers can enjoy a delicious lunch or dinner and watch any game on over 60 HDTV's. GameTime can also host large gatherings with full banquet services.

8.      The Debtor operates six GameTime locations in Florida. An additional two locations are under development. In connection with the COVID-19 pandemic, the Debtor's sales declined during the 12-months following the government mandated shutdown for COVID-19 by approximately 62% compared to the 12-month period prior to the shutdown. Though sales have improved over 2020, there is no assurance that sales will continue to improve, as the duration and severity of the COVID-19 pandemic and its effects remain uncertain. Adequate staffing has also proven difficult. As a result of the decreased sales, the Debtor began lease modification negotiations with its landlords. While these lease negotiations have been ongoing, they have not been concluded, and it is the Debtor's business judgment that negotiations will be more productive in the context of the Debtor's reorganization. Relatedly, the Debtor has accrued unpaid rent obligations of approximately $3,300,000, thus necessitating bankruptcy in order to reject certain leases if necessary and restructure the Debtor's corresponding debt.

## The MB Application[2]

9.      The Debtor seeks authority to retain, on an interim basis pending a final hearing, James C. Moon, Esq., and the law firm of Meland Budwick, P.A. (*"MB"*) as general bankruptcy counsel effective as of the Petition Date. As detailed in the MB Application, the Debtor

---

[2]      Capitalized terms shall have the meaning ascribed to them in the First Day Motions unless otherwise defined.

understands that Mr. Moon and MRB have extensive experience representing chapter 11 debtors in this district and that they are well-qualified to serve as general bankruptcy counsel to the Debtor. The Debtor believes it is in its best interests, and those of its creditors, that Mr. Moon and MB be retained to serve as Debtor's general bankruptcy counsel in its Chapter 11 Case.

10.      To the best of my knowledge, neither Mr. Moon nor MB have any connection with the Debtor's creditors or other parties in interest or their respective attorneys. Because there is a myriad of relief that must be sought from the Court immediately, the Debtor will suffer immediate and irreparable harm if it is unable to obtain the services of counsel before a final hearing on the application for approval of counsel's employment can be convened. For example, the Debtor requires the Court's approval to honor its Prepetition Employment Obligations to Employees, use Cash Collateral, and honor its Customer Programs. Without the ability to obtain use Cash Collateral, the Debtor will be unable to pay necessary operating expenses; without the ability to honor its Customer Programs and pay Prepetition Employment Obligations, the Debtor will be irreparably harmed by losing Customers and Employees, which are vital to its reorganization. It is, therefore, my belief that only with the granting of interim approval of counsel's employment will such immediate and irreparable injury be avoided. Accordingly, in the exercise of my business judgment, it is in the best interests of the Debtor, its estate and creditors to retain MB as the Debtor's general bankruptcy counsel.

## The Wage Motion

11.      The Debtor requests approval to pay and/or honor the Prepetition Employment Obligations to Employees, which include one insider. The Employees provide essential services to the Debtor, and their skills and understanding of the Debtor's operations and infrastructure are maintain the Debtor's business enterprise and success of its chapter 11 reorganization efforts. Payment to the Employees on account of already accrued and unpaid wages is necessary to

minimize the risk that the Employees will find other employment and to preserve Employee morale and productivity and continuous service to customers.

12.     The insider described in the Wage Motion is legitimate employee and essential to the Debtor's business operations. If the Debtor were required to replace this employee, the Debtor's business operations would be disrupted and prejudiced. Further, replacement of this employee could not likely be done at any cost savings to the Debtor. Indeed, the cost of replacing the employee would likely exceed the current amount being paid to such employee.

13.     The Debtor requests approval to continue all practices, programs and policies in effect as of the Petition Date with respect to all Prepetition Employment Obligations, as described in the Wage Motion.

## The Customer Programs Motion

14.     The Debtor seeks approval to continue its Customer Programs in the ordinary course of business and to honor approximately $10,543.51 of its prepetition obligations thereunder.

15.     The benefits of the Customer Programs are integral to the Debtor's efforts to stabilize its business, restore vitality, and ultimately deliver the most value to all stakeholders in this chapter 11 case. The Debtor believes it must quickly assure Customers of the Debtor's continued ability to fulfill its obligations under the prepetition Customer Programs in order to maintain valuable customer relationships following the commencement of this chapter 11 case.

16.     The continuity, viability, and revitalization of the Debtor's business is dependent on the development and maintenance of the loyalty of its Customers. It is essential that the Debtor be permitted to continue the Customer Programs and honor its prepetition obligations thereunder. If the Debtor is unable to do so, its operations will be irreparably harmed.

17.     The Customer Programs are standard practice in this industry. The Debtor's principal competitors maintain programs similar, if not identical, to those offered by the Debtor.

As such, Customers have come to expect these types of programs to be offered in the ordinary course of business by all participants in the Debtor's industry, including the Debtor.

18.    Another Customer Program relates to the Game Cards. Guest's visiting a GameTime venue load values on a game card. These cards are used for playing games, wining prizes and maintaining balances. There are two types of game play that can be purchased, Credit-based play, and Timed play. Timed play expires on the day the card is used for any game play. While credit-based play never expires. When a guest purchases play, our pricing encourages the guest to purchase large amounts of credits at once. Any amounts loaded on a card above $25.00 offer the guest bonus credits in a graduating scale. I.E. if a guest loads our best value, ($100.00) the guest receives 75% bonus credits. Bonus credits like purchased credits never expire and can be used in any GameTime venue. In addition to the credits a guest can purchase, guests win e-tickets that are accumulated directly on this game card. Many guests safe their e-tickets to redeem for hi-value ticket items.

19.    While our card policy is clearly stated on each card: "All sales are final, and guests will not be entitled to a cash refund of any unused portion." The balances on cards are valued by our guests and is a large driving factor in guests returning to our venues for regular game play and redemption of their e-tickets for prizes

20.    The Debtor's ability to continue the Customer Programs, which have proven beneficial, is necessary to reassure Customers and preserve goodwill. I believe that the resulting benefit of continued Customer satisfaction and loyalty during the pendency of this case will exceed the cost of such programs. Considering the potential for loss of competitiveness and the resulting impact on the Debtor's business, I believe that continuing the Customer Programs in the ordinary course of business and performing and honoring the Debtor's prepetition obligations thereunder is in the best interest of the Debtors, its estates, and its creditors.

## The Cash Collateral Motion

21.     The Debtor seeks entry of an Interim Order, and subsequently a Final Order, authorizing the Debtors to use Cash Collateral. The Debtor does not have sufficient working capital to fund the orderly continuation of its business, pay operating expenses, and administer this Chapter 11 case without the use of Cash Collateral. Accordingly, in the absence of the proposed use of Cash Collateral, the Debtor's operations will be severely impacted and may cease, the value of the Debtor's assets will dramatically decline and creditors and parties in interest will be severely prejudiced. The Secured Lender has consented to the Debtor's proposed use of Cash Collateral in accordance with the Budget filed in connection to the Cash Collateral Motion.

## The Critical Vendor Motion

22.     The Debtor seeks authority to pay the prepetition claim of American Express because its services are critical to the Debtor's continued operations. American Express provides the Debtor with credit services through the American Express Card used by the Debtor for a variety of purchases required for the daily operation of the Debtor's business.

23.     The Debtor utilizes the American Express Card for a wide variety of necessary purchases, many of which can only be purchased online. Accordingly, if the Debtor is unable to utilize the American Express Card postpetition for its ordinary course operational purchases, it will either be unable to purchase necessary product from its usual vendors, or the Debtor will be required to determine alternative payment methods or vendors, all to the detriment of the Debtor and the estate. I believe that just attempting to find such alternative payment methods or vendors would be very difficult and time-consuming, and would interfere with management's focus on reorganization and lease modification negotiations. In addition, the Debtor has earned significant points on the American Express Card which have a cash value and which it may lose if American Express discontinues credit services. I believe that loss of the American Express would

immediately and irreparably damage the estate.

24.    Our American Express account is used in our day-to-day operation allowing many needed functions to happen seamlessly. There are 18 active authorized users and about 500 transaction pre-month. Each user has their own unique need for this card. An additional benefit to utilizing this account is the ability to monitor and manage spending real time. We can set pre-set spending limits as well as notification. Without these cards many of these users would need to spend cash and be reimbursed or we may need to provide them a cash bank for spending needs, while online orders would not be possible at all. Cash management offers many challenges and far less control that is needed to ensure company funds are used appropriately. In addition, our accounting department saves countless hours per week not having to process each transaction individually. We would likely have to add an additional person in our accounting department to account for all the cash movement and payable invoices that would be increased.

25.    The Authorized Users and their authorized use of the American Express Card:

a. Michael Abecassis – Pays many vendors for Food, Prizes, operational needs (data, DirectTV, trash services, etc.) in addition to travel expense;

b. Shirley Fields – Manages all hi-value prizes by ordering directly from Best Buy and other online merchants, in addition to travel expense;

c. Kelley Abecassis – Rarely uses card, only in the event where she is asked to pick something up or order something needed;

d. Kenny Abecassis – Purchases facility maintenance items as needed;

e. Jonatan De Jesus - Rarely uses card, purchases facility maintenance items as needed;

f. Curt Lindbert - Parts ordering and other technical supply needs for all 6 venues;

g. Mark Kendall (Fort Myers GM) – Various items needed for the operations of the venue;

h. Reyes Hernandez (IT) – Order computer parts and supplies for all venues;

    i.   William Dumas (Miami GM) - Various items needed for the operations of the venue;

    j.   Andres Botero (Facilities maintenance) - Purchases facility maintenance items as needed, and travel expenses while servicing 5 venues;

    k.   Joseph Nass – Travels 2 days each week to service games, travel expenses and other repair items as needed;

    l.   Markeal Williams (Lead technician) – parts for game repairs and maintenance, and travel expenses while servicing 6 venues;

    m.   Mark Lipper – Parts ordering and other technical supply needs for all 6 venues;

    n.   Bob Hartley – Food and Beverage supplies needed for venues and travel expenses while visiting 6 venues;

    o.   Alvin Carrillo (Daytona GM) - Various items needed for the operations of the venue;

    p.   Isabelle Evans (Tampa GM) - Various items needed for the operations of the venue;

    q.   Litto Ismal Rios (Ocoee GM) - Various items needed for the operations of the venue; and

    r.   Chris Spicer (Kissimmee GM) - Various items needed for the operations of the venue.

26.    If the Critical Vendor Payment is approved, the Debtor's business will be stabilized preventing irreparable harm that could put all creditors, secured and unsecured, and the Debtor's employees, at substantial risk.

Pursuant to Section 1746, Title 28, of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 29, 2021.

_____
Michael Abecassis
Managing Member of A&E Adventures LLC